**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LORETTA E., | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | |
| FRANK BISIGNANO, | : | |
| Commissioner of the Social | : | |
| Security Administration, | : | |
| Defendant | : | NO.  25-3423 |

## MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                April 20, 2026

Loretta E., ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final

decision of the Commissioner of the Social Security Administration ("the Commissioner"),

denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security

Act.  Plaintiff has filed a brief in support of her request for review, the Commissioner has

responded, and Plaintiff has filed a reply.  For the reasons set forth below, Plaintiff's request for

review is granted.

### I.        PROCEDURAL HISTORY[1]

On December 8, 2021, Plaintiff applied for DIB, alleging that her disability commenced

on November 8, 2021.  R. 17.  The claim was denied initially and upon reconsideration; therefore,

Plaintiff requested a hearing. *Id.*  On June 4, 2024, Plaintiff, represented by counsel, and vocational

expert Donna Taylor ("the VE"), testified telephonically before Administrative Law Judge

Theodore Kim ("the ALJ"). *Id.*  On June 10, 2024, the ALJ, using the sequential evaluation process

---

[1] The court has reviewed and considered the following documents in analyzing this case:  Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply ("Reply"), and the administrative record.  ("R.").

("SEP") for disability,[2] issued an unfavorable decision.    R. 14-31.    The Social Security Administration's Appeals Council denied Plaintiff's request for review, on April 30, 2025, making the ALJ's findings the final determination of the Commissioner.  R. 1-6.  Plaintiff presently seeks judicial review; the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II.    FACTUAL BACKGROUND

A.    <u>Personal History</u>

Plaintiff, born on June 20, 1978, was 43 years old on her alleged disability onset date and 45 years old at the time of the administrative hearing.  R. 30.  She attended special education classes from elementary through middle school and has a high school diploma.  R. 58.  Plaintiff lives with a roommate and has an adult daughter.  R. 44, 56.

B.    <u>Plaintiff's Testimony</u>

Plaintiff has generalized anxiety that is exacerbated by both work and health-related concerns. R. 55.  Her anxiety is heightened simply by being at work.  R. 55.  She is also anxious

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1.  If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed.  Otherwise proceed to Step 2.  *See* 20 C.F.R. § 404.1520(b).
>
> 2.  If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed.  Otherwise proceed to Step 3.  *See* 20 C.F.R. § 404.1520(c).
>
> 3.  If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  Otherwise proceed to Step 4.  *See* 20 C.F.R. § 404.1520(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed.  Otherwise proceed to Step 5.  *See* 20 C.F.R. § 404.1520(f).
>
> 5.  The Commissioner will determine whether, given the claimant's residual functional capacity, age, education, and past work experience in conjunction with criteria listed in Appendix 2, he is or is not disabled.  *See* 20 C.F.R. § 404.1520(g).

about her eyesight and fears she is becoming blind. *Id.* Anything can trigger her anxiety, including her thoughts, fears, triggering events, or difficulty eating. *Id.* Plaintiff's anxiety "snowballs" and fluctuates throughout the day. *Id.* She describes herself as "very sensitive" and experiences racing thoughts, migraines, and stomach issues. R. 55-56.

Plaintiff takes Klonopin and melatonin to help with insomnia. R. 58. She does not take any medication for anxiety because "nothing helps." R. 59. Although Xanax previously helped, Plaintiff is not eligible for that medication because of prior suicide attempts and alcohol abuse. R. 59.

Plaintiff has good days and bad days, but experienced more bad days before the hearing because of anxiety, difficulty eating, obsessive thoughts, and headaches. R. 47, 55. She watches television, does laundry and dishes, shops for groceries, uses her phone, and attends medical appointments. R. 47-48. Plaintiff is one year behind on rent; she has no other bills. R. 57. Her roommate pays the household expenses. *Id.* Plaintiff survives on Medicare and food stamps. *Id.*

Plaintiff does not get along with members of the public, supervisors, or coworkers. R. 45-57. She also has a strained relationship with her adult daughter. R. 57. However, she socializes with her family at outings, holidays, graduations, and occasional birthdays. R. 56. Plaintiff either resigned from previous jobs or was terminated following emotional outbursts caused by stress and anxiety, or arguments with supervisors and coworkers. R. 49-54. When Plaintiff becomes emotional, she fixates on her feelings and triggers and is unable to focus or perform her duties. R. 51. She is also unable to calm herself down because "anxiety just takes over," and she "becomes another person." R. 55.

C.    Vocational Testimony

The ALJ categorized Plaintiff's past relevant work as follows:  commercial cleaner,

3

unskilled[3] work, normally performed at the heavy[4] level of exertion but performed by Plaintiff at the light[5] level; data entry clerk, normally performed at the sedentary[6] level of exertion; hostess, normally performed at the light level of exertion; and bill collector, normally performed at the light level of exertion, but performed by Plaintiff at the sedentary level.  R. 62-63.

Next, the ALJ asked the VE to consider a hypothetical individual having plaintiff's age, education, and vocational profile who could perform work at all exertional levels with the following limitations:  occasionally push, pull, or operate foot controls with the right lower extremity; occasionally interact with supervisors and coworkers; never climb ladders, ropes, or scaffolds; never get exposed to unprotected heights or moving mechanical parts; never interact with the public, or perform work requiring a specific production rate; understand, carry out, and remember simple instructions; and use judgment to make simple work-related decisions.  R. 63-66.  The VE opined that such an individual could perform Plaintiff's past work as a commercial cleaner "as she performed it, but not as it's usually done."  R. 63.

The VE testified that, if limited to medium[7] exertional work, the hypothetical individual still could perform the following jobs:  (1) dishwasher, 102,000 positions in the national economy; (2) railroad car unloader/helper, 50,000 positions in the national economy; and (3) church cleaner,

---

[3] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength." 20 C.F.R. § 404.1568(a)(c).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. § 404.1567(b).

[5] "Very heavy work involves lifting object weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds or more."  20 C.F.R. § 404.1567(e).

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary to carry out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

[7] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

62,000 positions in the national economy.  R. 63-64.  The VE further noted that the Dictionary of Occupational Titles ("DOT") does not address the rate of interaction, just the frequency of talking and hearing.

The VE next testified that a hypothetical individual who is off task 10% of the workday could still perform the three aforementioned positions, Plaintiff's past relevant work as a commercial cleaner, and the following light jobs:  (4) housekeeper, with 178,000 positions in the national economy; (5) price marker, with 137,000 positions in the national economy; and (6) collator, with 33,000 positions in the national economy.  R. 65.  The VE also testified that no employer would tolerate an employee who is off task more than 20% of the workday, is absent two or more days per month, or is unable to interact at all with coworkers.  R. 66.

Responding to questions from Plaintiff's attorney, the VE explained that occasional contact with a supervisor means interaction up to 33% of the time, and that all jobs require some contact with supervisors.  R. 68.  The VE also testified that the inability to respond appropriately to a supervisor will typically lead to termination and that employers would tolerate no more than one instance of an employee raising their voice or being insubordinate.  R. 68.

### III.    THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1.    [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2026 (B15D).

2.    [Plaintiff] has not engaged in substantial gainful activity since November 8, 2021, the alleged onset date (B10D, B2E) (20 CFR 404.1571 *et seq.*).

3.    [Plaintiff] has the following severe impairments: borderline personality disorder; bipolar II disorder; major depressive disorder; anxiety disorder; post-traumatic stress disorder (PTSD); migraine; and right foot plantar fasciitis (20 CFR 404.1520(c)).

4.      [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that the [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations. She can occasionally push or pull or operate foot controls with the right lower extremity. She can never climb ladders, ropes, and scaffolds, and can never be exposed to unprotected heights and moving mechanical parts. In addition, she can understand, carry-out, and remember simple instructions, and use judgment to make simple work-related decisions. She can occasionally interact with supervisors and co-workers, and can never interact with the public. She can deal with occasional changes in a routine work setting. She cannot perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas. She will be off task 10% of the workday.

6.      [Plaintiff] is capable of performing past relevant work as a commercial cleaner. This work does not require the performance of work-related activities precluded by the [Plaintiff's] residual functional capacity (20 CFR 404.1565).

7.      [Plaintiff] has not been under a disability, as defined in the Social Security Act, from November 8, 2021, through the date of this decision (20 CFR 404.1520(f)).

R. 19-20, 22, 29, 31.

## IV.    DISCUSSION

A.      <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed, if they are supported by substantial evidence.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not "a large or considerable amount of

evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ, and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.      Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially

demonstrate that a medically determinable impairment prevents her from returning to his past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.        Review of the Administrative Law Judge's Decision

Applying the SEP, the ALJ concluded that Plaintiff can perform her past work as a commercial cleaner with many non-exertional limitations. R. 22-31. Plaintiff disputes this determination, arguing that the ALJ erred in his Step 3 analysis and Step 4 residual functional capacity ("RFC") assessment, notably by excluding relevant, probative evidence during the Step 3 analysis without adequate explanation. Pl. Br. at 2-16. The Commissioner counters that the ALJ properly reached his non-disability decision. Resp. at 1-12. The court finds that the ALJ erred during his Step 3 analysis.[8]

The ALJ concluded that Plaintiff's impairments do not meet Listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse control disorders), or 12.15 (trauma- and stressor-related disorders). R. 20-22. These Listings require satisfaction of the "paragraph A" criteria and either the "paragraph B" or "paragraph C" criteria. 20 C.F.R 404, Subpart P, Appendix 1 § 12.00(A)(2)(b) ("Appendix 1 § 12.00(A)(2)(b)"). The "paragraph B" criteria are the same across all four Listings and are met by demonstrating either an *extreme* limitation in one, or *marked* limitations in two, of the following

---

[8] Plaintiff's meritorious argument requires that the ALJ reconsider her step three analysis. Her second argument concerns the ALJ's evaluation of her RFC, which is only relevant, if the ALJ again finds that she does not satisfy a listing. Plaintiff's second argument may be moot upon remand; hence, it is not necessary to address it now.

areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  Appendix 1 § 12.00(E)(1)-(4).  An extreme limitation means an inability to function independently, appropriately, or effectively on a sustained basis, whereas a marked limitation seriously limits that ability.  Appendix 1 § 12.00(F)(2)(d)-(e).

The ALJ concluded that Plaintiff is *mildly* limited in understanding, remembering, or applying information and *moderately* limited in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing herself.  R. 21.  Plaintiff contends that the findings of *moderate* limitation in interacting with others and adapting or managing oneself are erroneous, because the ALJ improperly ignored relevant, probative medical and lay evidence that contradicted the ALJ's non-disability determination.  Pl. Br. at 5-16.  This argument has merit.

<u>The ALJ erred in finding Plaintiff only moderately limited in interacting with others</u>

The ALJ erred in finding that Plaintiff is only *moderately* limited in her ability to interact with others, because he ignored relevant, probative evidence to the contrary, including medical opinion evidence from Mr. Dubesky, other medical evidence[9] from Plaintiff's long-term therapist, Trista Putt, LPC ("LPC Putt"), lay evidence from Plaintiff's daughter, Plaintiff's testimony, and her employment records.  The ALJ also relied on evidence that contradicts his ultimate findings and cited more evidence that undermines his conclusion, resulting in an insufficient and erroneous explanation.

The ALJ's assessment of this functional area is as follows:

> In interacting with others, the claimant has a moderate limitation. She alleged that she has problems getting along with others (B7E). During a psychological consultative exam, her manner of relating was poor. She was

---

[9] "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."  20 C.F.R. § 404.1513(a)(3).

> loud and used profanities; however, she made appropriate eye contact (B4F). During most mental status exams with psychiatry, her mood was euthymic and irritable (B3F/33-34, 43-44, 48-49, 53-54, B6F/3-4, 8-9, 13-14, 18-19, B17F/20-21, 30-31, 47-48). Therefore, her difficulty in this area is no more than moderate.

R. 21.  This explanation is insufficient and erroneous.

Here, the ALJ ignored significant, relevant, probative evidence that contradicts his conclusion.  First, the ALJ ignored medical opinion evidence from Plaintiff's treating provider, Vincent Dubesky, PA-C.  Mr. Dubesky opined that Plaintiff is markedly limited in her ability to interact with others.[10]  R. 28.  Mr. Dubesky supported his opinion and explained that Plaintiff's anxiety can be exacerbated by stress, changes to routine, and interacting with supervisors, coworkers or the public.  R. 629.  He also explained that Plaintiff struggles with situational anxiety and impulse control.  *Id.*  Mr. Dubesky further explained that Plaintiff experiences manic depressive shifts in her mood.  R. 629.

Next, the ALJ ignored other medical evidence from LPC Putt.[11]  LPC Putt explained that Plaintiff struggles daily with highly changeable moods, high emotional distress, and intense anxiety.  R. 609.  LPC Putt also noted that Plaintiff reported paranoid thoughts that her employer and coworkers purposely treat her poorly, which resulted in her verbally attacking and threatening

---

[10] The ALJ also erred regarding his analysis of Mr. Dubesky's opinions.  First, the ALJ did not address Mr. Dubesky's finding at Step 3, instead he discussed it during the RFC assessment.  However, Step 3 findings are distinct from, and do not translate into, the Step 4 RFC assessment, *Hess*, 931 F.3d at 209; thus, the ALJ was required to evaluate Mr. Dubesky's opinions at Step 3.

Further, when analyzing Mr. Dubesky's opinions for persuasiveness, the ALJ incorrectly stated that Mr. Dubesky's opinion was neither supported by his own records nor consistent with other evidence in the record.  Clearly, Mr. Dubesky supported his opinions.  R. 629-31.  Further, Mr. Dubesky's paragraph B determinations for Listing 12.15 do not appear inconsistent with the rest of the record. While the ALJ's analysis of the state agency consultants—Molly Haas Cowan, Psy.P., and Karen Evelyn Weitzner, Ph.D.—did not address their paragraph B determinations, it appears that Drs. Cowan and Weitzner did not make paragraph B determinations for Listing 12.15, as their analyses were limited to Listings 12.04, 12.06, and 12.08.  R. 85, 95.  Therefore, Mr. Dubesky's opinion regarding marked limitations for Listing 12.15 is consistent with the record.

[11] The ALJ similarly erred by discussing evidence from LPC Putt and Plaintiff's daughter only at Step 4.  LPC Putt and Plaintiff's daughter did not provide medical opinion evidence; however, their statements were clearly relevant to the ALJ's paragraph B determinations and should have been considered at Step 3.  *Hess*, 931 F.3d at 209.

them.  R. 628.  LPC Putt further stated that Plaintiff "significantly struggles with managing relationships" and described her as "very intense with her relationships."  R. 836.

The ALJ ignored lay evidence from Plaintiff's daughter that Plaintiff struggles to maintain relationships with friends and family, manage her emotions in stressful environments, work well with others, and deal with authority figures.  R. 335-36.  Additionally, the ALJ ignored Plaintiff's testimony that she left previous jobs or was fired after emotional outbursts caused by stress and anxiety, or after arguments with supervisors and coworkers.  R. 49-55.  The record also contains evidence that Plaintiff was terminated by one employer for using profanity at work, R. 374, and disciplined by another for displaying aggressive and inappropriate behavior toward customers, employees, and supervisors.  R. 373.

The ALJ relied on evidence that Plaintiff had an irritable mood during most mental status exams, which logically suggests that Plaintiff may be more limited in her ability to interact with others.  Additionally, the ALJ cited more evidence supporting a contrary conclusion.  He acknowledged that Plaintiff testified that she has problems getting along with others, had a poor manner of relating to others, and was loud and used profanities during psychological consultative exams. R. 21.  The only evidence supporting the ALJ's conclusion includes the fact that Plaintiff made appropriate eye contact during a consultative examination and exhibited a "euthymic" mood during most mental status examinations.  R. 21.  A euthymic mood is a normal, stable mental state that is neither manic nor depressive.  *Euthymic*, Merriam-Webster Dictionary, https://www.merriam-webster.com/medical/euthymic (last visited Feb. 24, 2026).  However, Plaintiff's eye contact and euthymic mood are of minimal significance when compared to the voluminous contrary evidence that the ALJ ignored.

The ALJ neither addressed nor explained the significant evidence that contradicts his Step

11

3 determinations and instead relied on insufficient evidence, rendering his conclusion unsupported by substantial evidence. *See Adorno v. Shalala*, 40 F.3d 43, 38 (3d Cir. 1994) (holding that an ALJ is not free to ignore record evidence that supports a contrary conclusion). Indeed, it appears that the ALJ reached his conclusion of a moderate limitation only by ignoring significant evidence to the contrary.

<u>The ALJ erred in finding Plaintiff moderately limited in adapting or managing herself</u>

The ALJ erred in finding that Plaintiff is only moderately limited in adapting and managing herself because he ignored relevant, probative evidence to the contrary, including medical opinion evidence from Mr. Dubesky, other medical evidence from LPC Putt, Plaintiff's testimony, and Plaintiff's employment records. The ALJ also relied on inherently contradictory evidence and evidence that undermines his finding, resulting in an insufficient and erroneous explanation.

The ALJ's assessment of this functional area is as follows:

> In adapting or managing oneself, the claimant has a moderate limitation. She alleged that she has problems handling stress and changes in routine (B4E). During a psychological consultative exam, her grooming and hygiene were satisfactory. Her insight and judgment were poor. She indicated, however, that she was independent with her activities of daily living (B4F). During mental status exams with psychiatry, her mood was euthymic and irritable, and her insight and judgment were fair (B3F/33-34, 43-44, 48-49, 53-54, B6F/3-4, 8-9, 13-14, 18-19, B17F/20-21, 30-31, 47-48). Therefore, her difficulty in this area is no more than moderate.

R. 21. Although the ALJ's analysis of this functional area is marginally more developed than his discussion of Plaintiff's ability to interact with others, it is, nonetheless, insufficient and erroneous.

Here, the ALJ ignored significant, relevant, probative evidence that contradicts his conclusion. First, he ignored medical opinion evidence from Mr. Dubesky that Plaintiff is markedly limited in her ability to adapt and manage herself. R. 28. Supporting his opinion, Mr. Dubesky explained that Plaintiff experiences fluctuations in mood and cognition due to bipolar disorder, struggles with situational anxiety and impulse control, and engages in reckless behavior.

12

R. 629.  Mr. Dubesky also opined that Plaintiff's symptoms may impact her ability to communicate effectively, make decisions, or solve problems.  *Id.*  Mr. Dubesky further opined that Plaintiff's anxiety can be exacerbated by stress, changes in routine, and from interacting with supervisors, coworkers and the public.  *Id.*  Mr. Dubesky also explained that Plaintiff experiences manic depressive shifts in her mood.  R. 629-30.

The ALJ also ignored other medical evidence from LPC Putt, who explained that Plaintiff experiences intense mood swings, has consistently high anxiety at work, and engages in risky behavior.  R. 628.  LPC Putt also noted that when Plaintiff experiences depressive episodes, she begins to feel hopeless about her future and bullies others.   R. 628.  LPC Putt further explained that, despite working with Plaintiff for nine years to manage her symptoms, Plaintiff consistently reported failing to regulate her emotions at work.  R. 628.

Next, the ALJ ignored Plaintiff's testimony that she was either terminated from or resigned from multiple jobs following "blowouts" or arguments with supervisors and coworkers.  R. 41-53.  Plaintiff also testified that she is unable to control her emotions at work, and her anxiety fluctuates throughout the day.  R. 55.  The ALJ further ignored record evidence from employment records that Plaintiff was terminated from a job for engaging in aggressive and inappropriate conduct, and for using profanity when she became frustrated with a coworker.  R. 373-74.  The ALJ also omitted evidence that Plaintiff was loud and used profanities during a consultative exam, which he considered when evaluating her ability to interact with others.  That omission is significant because Plaintiff's loud, profane behavior is directly related to her ability to regulate her emotions and is consistent with employment records indicating that she struggles to conform her conduct to workplace norms.  *Id.*

In support of his conclusion, the ALJ relied on inherently contradictory evidence—that

13

Plaintiff's judgment was poor during psychological consultative exams but fair during mental status exams.  R. 21.  Other evidence the ALJ relied on—satisfactory grooming and hygiene, Plaintiff's independence in her ADLs, and a euthymic mood with fair insight during mental status exams—is of minimal importance, considering the voluminous evidence showing Plaintiff's significant limitations in managing her emotions.

The ALJ neither addressed nor explained the significant evidence that contradicts his Step 3 determinations and instead relied on inherently contradictory and insufficient evidence, rendering his conclusion unsupported by substantial evidence.  *See Adorno*, 40 F.3d at 38.  Indeed, it appears that the ALJ reached his conclusion of a moderate limitation only by ignoring significant evidence to the contrary.

An implementing order and order of judgment follow.